[No. 15755.   Department One.   August 24, 1920.]

PACIFIC GROCERY COMPANY, *Appellant*, v.
JAMES GRIFFITHS & SONS *et al.*,
*Respondents.*[1]

LANDLORD AND TENANT (54)—POSSESSION AND USE—DISTURBANCE
BY LANDLORD—DAMAGES—EVIDENCE—SUFFICIENCY.  The evidence is
insufficient to show damages to the business of plaintiff, a lessee
of a portion of a dock, caused by another lessee of a portion thereof
by the maintenance of a guarded gate locked at night and on Sun-
days across the entrance to the dock, or by the laying of an oil pipe
line along the edge of the dock so as to interfere with the loading
of boats, or damage to merchandise from steam escaping from a
pipe extending through its warehouse, where it appears that plain-
tiff acquiesced therein and was not inconvenienced and suffered no
material damage.

Appeal from a judgment of the superior court for
Snohomish county, Bell, J., entered May 28, 1919, upon
findings in favor of the defendants, in an action for
damages, tried to the court.  Affirmed.

*Cooley, Horan & Mulvihill* and *W. P. Bell,* for ap-
pellant.

*Trefethen & Findley,* for respondents.

MITCHELL, J.—The Great Northern Railway Com-
pany is the owner of a dock and warehouse about eight
hundred feet long, running east and west, in the city
of Everett.  The Pacific Grocery Company, under a
lease from the Great Northern Railway Company, at
one time occupied the east three hundred and five feet
of the warehouse and conducted therein a wholesale
grocery business, receiving much of its merchandise by
boats and steamers.  The dock on its southerly side
extends about sixteen feet beyond the exterior wall of
the warehouse.  The Seattle-Everett Dock & Ware-

[1]Reported in 191 Pac. 785.

house Company leased from the railway company and occupied the westerly five hundred feet of the ware-house for an oil dock. The Pacific Grocery Company orally sublet to the Seattle-Everett Dock & Warehouse Company and put it into possession of the westerly two hundred feet of the easterly three hundred and five feet of the warehouse. The approach from the street, several hundred feet distant, was over a drive and walkway to the eastern end of the dock and warehouse. The Seattle-Everett Dock & Warehouse Company maintained a gate, under guard during business hours and locked at night and on Sundays, across the drive and walkway several months prior to the Pacific Grocery Company's finally quitting possession of the warehouse. To facilitate its business as an oil dealer, the Seattle-Everett Dock & Warehouse Company, with the consent of the railway company, placed an oil pipe line along the top and near the south edge of the dock. Expecting to later occupy the remaining one hundred and five feet of the warehouse in possession of the Pacific Grocery Company (which occupancy had taken place at the time of the trial of this case), the Seattle-Everett Dock & Warehouse Company extended a steam pipe through that portion of the warehouse (the east one hundred and five feet) occupied by the grocery company. Upon making a test of the steam pipe, upon its being put in place, steam and vapor escaped through an open plug of the pipe into the room containing the merchandise of the Pacific Grocery Company.

This action was brought to recover for damage to the grocery company's business on account of the maintenance of the guarded gate in front of the premises; damage to the grocery company's business by placing and maintaining the oil pipe near the edge of the dock, interfering with loading and unloading boats;

and damage to the stock of merchandise caused by steam that escaped from the steam pipe. The case was tried without a jury, resulting in findings, conclusions and a judgment against the plaintiff. The plaintiff has appealed.

As to the first claim of damage, it satisfactorily appears that, prior to building the gate, the Seattle-Everett Dock & Warehouse Company was advised by the Secretary of War that it would be necessary to erect gates at the entrance to the dock. The matter was taken up with the railway company, which gave its consent. Then the matter was taken up with appellant, through its president, and a sketch of the proposed location of the gates was submitted to him in a letter from Seattle-Everett Dock & Warehouse Company, dated March 19, 1918. On March 21, 1918, appellant's president replied by letter in which he said:

"We are in receipt of your letter of March 19. I think the gate idea is a good one, provided they are not locked so as to lock our customers out when they want to come in and buy goods, but it is a good plan to lock them at night and Sundays, and I think we can arrange a plan that will be mutually agreeable."

The gates were erected according to the sketch submitted, without any protest, and thereafter kept locked at night and on Sundays. During business hours the gates were guarded at the expense of the respondents, and no objection was ever made thereto by the appellant as to either the maintenance or method of operating the gates until about November 2, 1918, a day or two after appellant had received written notice from the railway company to vacate the premises. Appellant failed to show or name any customer or person who was either annoyed or kept away from its place of business on account of the gates. The watchman testified that all persons who had any business with

appellant passed without the slightest hindrance and that, during all the time, only four persons were refused, neither of whom claimed to have any business with the appellant.

As to the second claim of damage, the trial court found that the laying and maintenance of the oil pipe line did not interfere with the appellant's necessary ingress or egress, nor was any damage suffered by it on account of the existence and presence of the pipe line as placed. The finding is supported by a preponderance of the evidence. The president of appellant, on cross-examination, testified: "The pipe in front of the warehouse was objectionable, but did not seriously interfere with our daily routine of work." When the oil pipe was being constructed, the president of appellant company and the superintendent of the respondent Seattle-Everett Dock & Warehouse Company discussed the question as to whether or not the pipe would interfere with loading and unloading boats. Upon being informed by the superintendent that the pipe could be elevated to any height desired, the president of the appellant company replied: "He guessed it would be all right," and the pipe was laid as heretofore indicated.

As to the third claim of damage, there is a dispute as to whether or not any objection was made by the appellant to the putting of a steam pipe through its premises, until after the work was done. The evidence satisfies us more favorably against the appellant. The pipe was installed in the daytime during the hours appellant's agents and employees were engaged at their business in the room through which the pipe was run, without any objection being made to the plumbers or any one else while the work was being done; and it is undisputed that the appellant removed the plug

through which the steam escaped for just a few minutes. We are also satisfied by the evidence that the appellant did not notify respondents it had removed the plug prior to the making of the test that caused steam to escape. In this respect the trial court found the steam did not cause any damage, and we are convinced the finding is correct.

Another error assigned, relating to alleged increased cost of insurance, we understand has been abandoned by the appellant on its appeal.

Judgment affirmed.

HOLCOMB, C. J., PARKER, MAIN, and BRIDGES, JJ., concur.